UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, Individually and on Behalf of All Others Similarly Situated,

: Civil Action No.

                     Plaintiff,

        vs.

PICS N.V., EDUARDO CHEDID SIMOES, RODRIGO LUIS ROSA COUTO, JOSE ANTONIO BATISTA COSTA, EDUARDO CRUZ, JACKSON RICARDO GOMES, MARCIO ANTONIO TEIXEIRA LINARES, MAURICIO COSTA DE MOURA, WILLIAM RODNEY PRUETT, CITIGROUP GLOBAL MARKETS, INC., BofA SECURITIES, INC., RBC CAPITAL MARKETS, LLC, MIZUHO SECURITIES USA LLC, NOMURA SECURITIES INTERNATIONAL, INC., WR SECURITIES, LLC, BANCO BRADESCO BBI S.A., BB SECURITIES LIMITED, BANCO BTG PACTUAL S.A., XP INVESTIMENTOS CORRETORA DE CAMBIO, TITULOS E VALORES MOBILIARIOS S.A., FTP SECURITIES LLC, J&F PARTICIPACOES S.A., JOESLEY MENDONCA BATISTA, and WESLEY MENDONCA BATISTA,

                   Defendants.

——————————————————— x

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**

CLASS ACTION

DEMAND FOR JURY TRIAL

Plaintiff FirstFire Global Opportunities Fund, LLC ("Plaintiff"), by and through Plaintiff's undersigned attorneys, individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the United States Securities and Exchange Commission ("SEC") filings by PicS N.V. ("PicS" or the "Company"), and securities analyst reports, press releases, media reports, public statements issued by, or about, the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act") on behalf of all persons or entities who purchased PicS Class A common stock in and/or traceable to PicS' January 30, 2026 initial public offering ("IPO") against PicS, the PicS officers and directors responsible for the offering, the IPO underwriters, and controlling persons of PicS. In the IPO, the Company sold approximately 22.9 million shares of Class A common stock to the public at $19 per share, generating gross proceeds of $434.3 million. By June 4, 2026, the price of the PicS Class A common stock sold in the IPO fell to a low of less than $9 per share, more than 50% below the IPO price, damaging PicS investors.

## JURISDICTION AND VENUE

2.      The claims alleged herein arise under and pursuant to Sections 11, 12, and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o. Jurisdiction is conferred by Section 22 of the Securities Act, 15 U.S.C. §77v.

- 1 -

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and Section 22 of the Securities Act because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination to the public of untrue statements of material facts, the underwriting and execution of the IPO, and the listing and trading of the shares sold in the IPO, which trade on the Nasdaq. Defendants are also found or transact business in this District, and PicS maintains its agent, Equiniti Trust Company, LLC, in this District to act as transfer agent, registrar, and paying agent for the Class A common shares. Additionally, PicS has appointed Cogency Global Inc., with offices at 122 East 42nd Street, 18th Floor, New York, NY 10168, as its agent to receive service of process with respect to any action brought against PicS in the United States under the federal securities laws of the United States or of any state in the United States arising out of the IPO.

4. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications, and the facilities of national securities exchanges.

## PARTIES

**Plaintiff**

5. Plaintiff FirstFire Global Opportunities Fund, LLC purchased PicS Class A common stock directly in and traceable to the Offering Documents, as reflected in the attached Certification incorporated herein by reference, and has been damaged thereby.

**Defendants**

6. Defendant PicS N.V. was incorporated in December 2023 as a private limited liability company under Dutch law, with its corporate seat in Amsterdam, the Netherlands, and with the name Picpay Holdings Netherlands B.V. In connection with the IPO, Picpay Holdings

Netherlands B.V. was converted to a public limited liability company under Dutch law with the name PicS N.V. The Company is headquartered in São Paulo, Brazil, and its Class A common stock trades on the Nasdaq under the ticker symbol "PICS."

7. Defendant Eduardo Chedid Simoes ("Chedid") has been PicS' Chief Executive Officer ("CEO") since 2024 and serves as an Executive Director on the Company's Board of Directors ("Board").

8. Defendant Rodrigo Luis Rosa Couto ("Couto") has been PicS' Chief Financial Officer ("CFO") since October 2025.

9. Defendant Jose Antonio Batista Costa ("Batista") is the Chairman of the Board.

10. Defendant Eduardo Cruz ("Cruz") is a member of the Board.

11. Defendant Jackson Ricardo Gomes ("Gomes") is a member of the Board.

12. Defendant Marcio Antonio Teixeira Linares ("Linares") is a member of the Board.

13. Defendant Mauricio Costa de Moura ("Moura") is a member of the Board.

14. Defendant William Rodney Pruett ("Pruett") is a member of the Board.

15. Defendants Chedid, Couto, Batista, Cruz, Gomes, Linares, Moura, and Pruett are collectively referred to herein as the "Individual Defendants." Each of the Individual Defendants signed the Registration Statement (as defined herein) for the IPO. Each of the Individual Defendants also participated in the preparation of the Offering Documents and, as directors and/or executive officers of the Company, participated in the solicitation and sale of the Company's Class A common stock to investors in the IPO for their own financial benefit and the financial benefit of PicS.

**Additional Defendants**

16. Defendant J&F Participacoes S.A. ("J&F"), through its subsidiary J&F International B.V., beneficially owned 23.25% of PicS' Class A common shares and 100% of

PicS' Class B common shares, representing approximately 96.4% of the combined voting power over PicS immediately after the IPO. J&F is jointly controlled, pursuant to a shareholders' agreement, by Defendants J. Batista and W. Batista (defined below).

17. Defendant Joesley Mendonca Batista ("J. Batista") is a controlling shareholder of PicS and a controlling person over J&F. Along with W. Batista (defined below), J. Batista controlled, following the IPO, approximately 96.4% of the Company's voting power.

18. Defendant Wesley Mendonca Batista ("W. Batista") is a controlling shareholder of PicS and a controlling person over J&F. Along with J. Batista, W. Batista controlled, following the IPO, approximately 96.4% of the Company's voting power.

19. As a result of their majority voting interests, W. Batista and J. Batista had the ability to control matters submitted to a vote of shareholders; appoint a substantial majority of the members of PicS' Board, and exercise overall control over the Company.

20. The Individual Defendants, J&F, J. Batista, and W. Batista are collectively referred to herein as the "Section 15 Defendants." Each of the Section 15 Defendants controlled PicS, including controlling matters that require approval at a general meeting of shareholders and/or the Company's articles of association, including, among other things, the appointment of a majority of the members of the Board.

**Underwriter Defendants**

21. Defendants Citigroup Global Markets Inc., BofA Securities, Inc., RBC Capital Markets, LLC, Mizuho Securities USA LLC, Nomura Securities International, Inc., WR Securities LLC, Banco Bradesco BBI S.A., BB Securities Limited, Banco BTG Pactual S.A., XP Investimentos Corretora de Câmbio, Títulos e Valores Mobiliários S.A., FTP Securities LLC (collectively, the "Underwriter Defendants") are financial services companies that acted as underwriters for the IPO and as representatives of the underwriters involved in the IPO.

- 4 -

Collectively, the Underwriter Defendants shared in $30.4 million in underwriting discounts and commissions in connection with the IPO. According to the Offering Documents, the Underwriter Defendants provided a firm commitment underwriting for the following number of shares of PicS Class A common stock sold in the IPO:

| Underwriter | Number of Class A Common Shares |
| --- | --- |
| Citigroup Global Markets Inc. | 8,857,143 |
| BofA Securities, Inc. | 8,285,714 |
| RBC Capital Markets, LLC | 1,828,571 |
| Mizuho Securities USA LLC | 1,142,857 |
| Nomura Securities International, Inc. | 1,085,715 |
| WR Securities, LLC | 57,142 |
| Banco Bradesco BBI S.A. | 314,286 |
| BB Securities Limited | 314,286 |
| Banco BTG Pactual S.A. – Cayman Branch | 314,286 |
| XP Investimentos Corretora de Câmbio, Títulos e Valores Mobiliários S.A. | 314,286 |
| FTP Securities LLC | 342,857 |
| **Total** | **22,857,143** |

22.     The Underwriter Defendants' failure to conduct adequate due diligence in connection with the IPO and the preparation of the Offering Documents was a substantial factor leading to the harm complained of herein.

23.     The Underwriter Defendants participated in the drafting and dissemination of the Offering Documents and failed to perform adequate due diligence in connection with their roles as underwriters. As a result, they were negligent in failing to ensure that the Offering Documents were prepared accurately and in accordance with the rules and regulations governing their preparation. Additionally, on information and belief, the Underwriter Defendants participated in preparing road show and other materials used to solicit Class A common stock purchasers in connection with the IPO.

24.    "Securities Act Defendants," as used herein, collectively refers to PicS, the Individual Defendants, and the Underwriter Defendants. "Defendants," as used herein, collectively refers to the Securities Act Defendants and the Section 15 Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

25.    PicS operates one of the largest digital banks in Brazil. The Company offers various payment, credit, insurance, and investment products across both financial and non-financial services. Despite the size of Brazil's economy and its relatively high internet and mobile connectivity, Brazil remains significantly underpenetrated with respect to financial service offerings. Brazil also exhibits relatively low levels of household and corporate debt. These factors present a potentially large growth opportunity for a financial services firm like PicS operating in the country. According to PicS, Brazil is a "conductive environment for disruptors, such as PicPay, due to its large population, expanding digital infrastructure, and continuously growing demand for financial services."

26.    Credit products represent one of PicS' main growth drivers. Prior to October 2023, the Company's credit operations were "asset-light," meaning that its credit business was focused only on the distribution of products originated by third-party partners connected via the Company's app, with the Company earning commissions from the sale of new loans and so-called "success fees" from each loan payment made by PicS' customers. Beginning in October 2023, the Company began originating credit products directly on its balance sheet, a strategic initiative purportedly "aimed at expanding our product offering and strengthening our consumers' principality."

27.    By the fourth quarter of 2025, credit products accounted for 52% of PicS' total revenue. The Company's credit business included multipurpose cards (prepaid and credit), personal loans, buy-now-pay-later loans, payroll loans for public servants, retirees, and pensioners,

private payroll loans for employed workers, and early access to the Fundo de Garantia do Tempo e Serviço ("FGTS") annual birthday withdrawal program. The FGTS is a severance indemnity fund for employees in Brazil. Leading up to the IPO, employees in Brazil could opt to receive part of their FGTS on an annual birthday basis and/or in specific situations, such as dismissal without just cause or retirement. The Company made FGTS loans through its app, which allowed customers to drawdown in advance up to seven annual payments of their FGTS, and the Company received guaranteed repayment of such installments and interest directly from the FGTS.

28.     Like other credit lenders, PicS maintains a loss allowance for expected credit losses ("ECL"). The Company classifies its financial assets in three stages and calculates loss allowance provisions accordingly. The three stages are: (i) Stage 1: no significant increase in credit risk since recognition; (ii) Stage 2: significant increase in credit risk subsequent to recognition; and (iii) Stage 3: credit impaired. The proportion of PicS' loans in Stage 1, Stage 2, or Stage 3 was of critical importance to investors at the time of the IPO in order to assess the credit quality of PicS' loan portfolio, the health of the Company's revenues, and the likelihood of adverse credit events or associated losses. Based on the three stages, the Company calculates ECL utilizing the probability of default, exposure at default, and loss given default ("LGD").

29.     PicS describes the riskiest Stage 3 credit assets as having the following characteristics: (i) the financial asset is overdue for more than 90 days; (ii) there are indications that the financial asset will not be fully paid without a collateral or financial guarantee being triggered; and (iii) the probability of default is considered 100%, as the customer has already defaulted.

30.     Given that Stage 3 loans represent customers already in default, the rate at which PicS' loans migrated from Stage 2 to Stage 3 is an important metric to measuring the credit risk of

PicS' business, the Company's expected credit losses, and its overall financial performance. For example, if the rate at which Stage 2 loans deteriorated into Stage 3 loans increased over time, that would signal potential problems with the Company's credit portfolio and require increased loss allowance provisions, which would, in turn, negatively impact the Company's financial performance and outlook.

31.    Prior to the IPO, in December 2025, PicS conducted an annual review of its ECL parameters. As part of this review, PicS determined that its historical credit evaluation policies and procedures were deficient. As a result, the Company implemented several methodological enhancements, including: (i) the introduction of renegotiation delinquency tracking; (ii) further specialization of credit models for newly launched products; (iii) the adoption of more advanced machine learning techniques; and (iv) the migration from benchmark-based LGD assumptions to internally developed LGD models. In addition, PicS adopted a stricter policy to accelerate the migration of renegotiated non-performing exposures from Stage 2 to Stage 3 in order to more accurately reflect underlying credit risk and enhance the timeliness of default recognition. Applying these changes, the Company reclassified approximately R$590 million of exposures previously classified as Stage 2 to Stage 3, leading to an incremental ECL charge of R$88 million in the three months ended December 31, 2025. PicS' systemic changes and identification of additional loan deficiencies were not disclosed to investors until after the IPO.

**The IPO**

32.    On January 30, 2026, PicS concluded its IPO, in which the Defendants sold approximately 22.9 million shares of Class A common stock to the public at $19 per share, generating gross proceeds of $434.3 million. After deducting expenses, underwriting discounts, and commissions, PicS received $388.3 million from the IPO.

33.     The IPO was conducted pursuant to, and the sale of PicS stock was solicited by, several documents filed by Defendants with the SEC and disseminated by Defendants to the investing public, including: (i) a registration statement on Form F-1, which, following amendment, was declared effective by the SEC on January 28, 2026 (the "Registration Statement"); and (ii) a final prospectus on Form 424B1 dated January 29, 2026, which forms part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

**The Offering Documents Contained Materially False and Misleading Statements of Fact and Omitted Material Information**

34.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing its preparation.

35.     The Offering Documents described how the "convenience of applying for loans" within the Company's banking app had resulted in "significant adoption," with consumers originating R$7 billion in Company and third-party loans in the 3Q 2025, an increase of 46% compared to R$4.8 billion in the corresponding period in 2024.

36.     The Offering Documents further stated that PicS' digital wallets allowed it to collect a broad range of valuable data on its customers, which the Company used to inform its credit models. The Offering Documents stated PicS had a "rich track of consumers' transactional behavior, an essential input for assessing their risk profile with us." The Offering Documents added that, beginning in 2024, the Company had "deployed a new generation of customized credit models, with a focus on credit card and personal loan models" and "exclusive behavior credit data." The Offering Documents claimed that the Company's exclusive credit data and proprietary

models allowed it to "present up to 3.0 times more accuracy on [its] models based on the most recent data from the second quarter of 2024."

37.     With respect to the Company's credit offerings and purportedly "strict credit underwriting criteria," the Offering Documents stated:

> We distribute our own issued credit and prepaid cards and personal loans for select consumers that we believe have a favorable credit profile, as well as FGTS and public and private payroll loans. ***We are able to leverage the user data that we collect from transactions within our ecosystem and from Open Finance consents to offer credit to those consumers who meet our strict credit underwriting criteria***. We believe that as one of the largest digital wallets in the market, we are able to develop a credit history based on the everyday payments of our consumers, and also generate user credit scores based on our proprietary algorithm. Combining that with AI models and machine learning, we provide more relevant personalized offerings targeted at our consumers' needs, increasing engagement and enhancing user experience.

38.     In particular, the Offering Documents highlighted PicS' Stage 3 formation rate, a metric the Company purportedly used to show "the new contracts entering default during the quarter" and that allowed PicS to "***captur[e] early signs of deterioration before they show up in the NPL over 90 days past due***." The Offering Documents added that the Stage 3 formation rate is "calculated considering the stage 3 balance in the end of each period minus the stage 3 balance in the immediately previous period plus write-off migration and reversal due to liquidation." The Offering Documents provided the following graph regarding PicS' Stage 3 Formation Rate, which represented that the rate had remained relatively stable over the course of the prior year, and reported that the Stage 3 Formation rate was a modest 3.6% as of September 30, 2025, well within historical norms:



**Stage 3 Formation Rate**[1]
*(%)*

| 3.3% | 2.9% | 2.9% | 3.1% | 3.6% |
|------|------|------|------|------|
| 3Q24 | 4Q24 | 1Q25 | 2Q25 | 3Q25 |

39.    The statements in ¶¶35-38 were materially false and misleading when made because they failed to disclose the following adverse facts that existed prior to and at the time of the IPO:

(a)    that PicS had conducted an evaluation of its credit evaluation procedures in December 2025 and determined that such procedures were deficient and in need of enhancement;

(b)    that, as a result of the new procedures the Company had implemented in December 2025, PicS had reclassified approximately R$590 million of exposures previously classified as Stage 2 to Stage 3, leading to an incremental ECL charge of R$88 million in the three months ended December 31, 2025;

(c)    that PicS had experienced a heightened, but unreported, Stage 3 formation rate of more than 7% in the fourth quarter of 2025 that deviated substantially from the historical results and trends provided in the Offering Documents;

(d)    that the Offering Documents had materially overstated the quality and ability of the Company's credit models and user data to inform the Company's underwriting practices and to allow PicS to timely and effectively monitor, assess, and identify adverse credit events, credit risks, and credit deterioration across its portfolio; and

(e)    that PicS suffered from degradations in customer credit quality and heightened risks of default and loan impairment as a result of its entrance into materially riskier

- 11 -

business lines leading up to the IPO, resulting in undisclosed adverse financial and operational trends such as heightened incidents of default, which predated the IPO and were internally projected by PicS to continue to worsen following the IPO, materially impairing the Company's business, operations, and financial results.

40.     The undisclosed adverse facts and circumstances regarding the failure of the Company's credit assessment and underwriting capabilities and the proliferation of adverse credit events across much of PicS' portfolio detailed above also presented known trends, uncertainties and risks that required disclosure in the Offering Documents. Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303, required the Company to disclose "any known trends or uncertainties that have had or that [PicS] reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Moreover, Item 105 of Regulation S-K, 17 C.F.R. §229.105, required disclosure in the Offering Documents of "the most significant factors that ma[d]e an investment in [the IPO] speculative or risky" and an explanation of "how the risk affect[ed] [PicS] or the securities being offered." The Offering Documents failed to disclose material facts necessary to apprise Class A common stock purchasers of the true risks inherent in investing in the Company. Indeed, the purported risk disclosures provided in the Offering Documents, to the extent they were relevant at all, were themselves materially misleading because they failed to disclose the true facts impacting PicS' business, operations and financial results and/or characterized materially adverse facts that had already materialized as ***contingent possibilities*** that could impact PicS' in the ***future***.

**Events Following the IPO**

41.     On February 5, 2026, just five days after the IPO, *Seeking Alpha* published a report by a financial analyst focused on Brazilian fintech companies titled, "PicPay: Stay Away from the Stock at this Price," which asserted the Company was significantly overvalued, with an

unfavorable margin profile as compared to PicS' peers. The article noted that demand for PicS stock in the IPO exceeded supply by more than 12 times and added that J&F had a troubled history "marked by conflicts of interest and corruption with the Brazilian Government . . . ."

42.     On March 19, 2026, less than three months after the IPO, PicS filed a Form 6-K with the SEC. The results covered the fourth quarter ("4Q") and full year ended December 31, 2025, *which ended prior to the IPO*.

43.     In its earnings release, the Company stated that R$590 million (or more than $110 million as of the date of this Complaint) of the Company's credit portfolio balances had been "reclassified" from Stage 2 (underperforming) to Stage 3 (credit-impaired), *i.e.*, already in default. This significant reclassification resulted in a material jump in PicS' reported ECL provisions, which materially lowered the Company's profitability and signaled the Company was subject to much higher credit risk than investors in the IPO had been led to expect. Specifically, the Company stated that in December 2025 – prior to the IPO – it had "implemented a stricter policy to accelerate the classification of renegotiated non-performing exposures from Stage 2 to Stage 3," and that "[d]uring the quarter, R$590 million of Stage 2 portfolio balances were reclassified to Stage 3, resulting in an ECL increase of R$88 million in the quarter."

44.     The Company also reported a significant increase in its "Stage 3" non-performing loans ("NPLs"), which spiked 7.1% in the 4Q 2025, a *97%* increase over 3Q 2025. The rapid rise in the Company's reported Stage 3 formation rate for the 4Q 2025, which closed prior to the IPO, is demonstrated in the chart below:



45.      Belying the "strict underwriting criteria," customized credit models based on "exclusive behavior Credit data," and purportedly heightened credit model accuracy highlighted in the Offering Documents, PicS reported that it had significantly reformed its credit loss parameters weeks before the IPO, stating:

> Additionally, in December 2025, we conducted our annual review of expected credit loss parameters, reflecting the increasing maturity of our credit portfolios and improvements in our risk models. Enhancements included the implementation of renegotiation tracking, specialization of models for new products, adoption of advanced machine learning techniques, and migration from benchmark LGD assumptions to internally developed models. Additionally, *we implemented a stricter policy to accelerate the classification of renegotiated non-performing exposures from Stage 2 to Stage 3. During the quarter, R$590 million of Stage 2 portfolio balances were reclassified to Stage 3, resulting in an ECL increase of R$88 million in the quarter*.

46.      On June 2, 2026, PicS announced its first quarter of 2026 financial results. PicS stated that its Stage 3 loans had increased sequentially to 13% of its total credit portfolio. In addition, the Company's NPLs with balances 15 to 90 days overdue reached 8.4% of the portfolio (up from 6.2% during the prior year comparable period), while NPLs more than 90 days past due reached 8.9% of the portfolio (up from 4% during the prior year comparable period).

47.     By June 4, 2026, PicS Class A common stock fell to a low of less than $9 per share, representing a more than *50%* decline from the $19 per share IPO price. The price of PicS Class A common stock has remained substantially below the IPO price as of the date of the filing of this Complaint. As a result, investors who purchased PicS Class A common stock in or traceable to the IPO have suffered significant damages under the federal securities laws.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action as a class action on behalf of all persons or entities who purchased PicS Class A common stock in and/or traceable to the Offering Documents (the "Class"). Excluded from the Class are defendants and their families; the officers, directors, and affiliates of defendants and members of their immediate families; the legal representatives, heirs, successors or assigns of any of the foregoing; and any entity in which any defendant has or had a controlling interest.

49.     The members of the Class are so numerous that joinder is impracticable. PicS Class A common stock is actively traded on the Nasdaq and millions of Class A common shares were sold in the IPO. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are hundreds, if not thousands, of members in the Class. Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

50.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

        (a)     whether Defendants violated the Securities Act;

(b)     whether the Offering Documents issued by the Defendants to the investing public in connection with the IPO was negligently prepared and contained inaccurate statements of material fact or omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

51.     Plaintiff's claims are typical of the claims of the Class, as all Class members were similarly affected by Defendants' conduct.

52.     Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in securities class actions.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible and impracticable, for Class members to individually redress the wrongs alleged. There will be no difficulty in managing this action as a class action.

## COUNT I

**For Violations of Section 11 of the Securities Act**
**Against the Securities Act Defendants**

54.     Plaintiff repeats and re-alleges each and every allegation contained above in ¶¶1-53 as if fully set forth herein.

55.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of Plaintiff and the Class against the Securities Act Defendants. This claim does not sound in fraud, and Plaintiff does not claim that any of the Securities Act Defendants engaged in intentional or reckless misconduct or acted with fraudulent intent.

56.    The Registration Statement for the IPO was inaccurate and contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not inaccurate, and omitted to state material facts required to be stated therein.

57.    PicS was the registrant for the IPO. As the issuer of its common stock, PicS is strictly liable to Plaintiff and the Class for the materially inaccurate statements in the Registration Statement and the failure of the Registration Statement to be complete and disclose the material information required to be disclosed therein pursuant to the regulations governing the Registration Statement's preparation.

58.    The Individual Defendants signed the Registration Statement and caused its issuance. Each of the Individual Defendants had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. The Individual Defendants had a duty to ensure that such statements were true and accurate, and that there were no omissions of material facts that would make the statements in the Registration Statement inaccurate. By virtue of the Individual Defendants' failure to exercise reasonable care, the Registration Statement contained inaccurate misrepresentations and/or omissions of material facts. As such, the Individual Defendants are strictly liable to Plaintiff and the Class under Section 11 of the Securities Act.

59.    The Underwriter Defendants served as underwriters for the IPO. As such, they participated in the solicitation, offering, and sale of the securities to the investing public pursuant to the Registration Statement. Each of the Underwriter Defendants, as an underwriter of the securities offered in the IPO pursuant to the Registration Statement, had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They each had a duty to ensure that such statements were true and

accurate and that there were no omissions of material fact that would make the statements misleading. By virtue of each of the Underwriter Defendant's failure to exercise reasonable care, the Registration Statement contained false statements of material facts and omissions of material facts necessary to make the statements made therein not misleading. As such, each of the Underwriter Defendants is liable under Section 11 of the Securities Act to Plaintiff and the Class.

60.     The Securities Act Defendants were responsible for the contents and dissemination of the Registration Statement. None of the Section 11 Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not inaccurate. By reasons of the conduct herein alleged, each Defendant named herein violated and/or controlled a person who violated Section 11 of the Securities Act.

61.     At the time of their purchases of PicS Class A common shares in and/or traceable to the IPO, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

62.     Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that the action commenced. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time this action commenced.

## COUNT II

### For Violations of Section 12(a)(2) of the Securities Act
### Against the Securities Act Defendants

63.     Plaintiff repeats and re-alleges each and every allegation contained above in ¶¶1-62 as if fully set forth herein.

64. The Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of Plaintiff and members of the Class against the Securities Act Defendants. This claim does not sound in fraud, and Plaintiff does not claim that any of the Securities Act Defendants engaged in intentional or reckless misconduct or acted with fraudulent intent.

65. By means of the Prospectus, the Securities Act Defendants promoted, solicited, and sold PicS shares to Plaintiff and Class members. The Securities Act Defendants were sellers to and direct solicitors of purchasers of the Company's Class A common stock offered in the IPO. The Securities Act Defendants issued, caused to be issued, and/or signed or authorized the signing of the Prospectus in connection with the offering, and used it to directly induce investors, including Plaintiff and Class members, to purchase the Company's shares.

66. The Prospectus contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above. The Securities Act Defendants' acts of solicitation included participating in the preparation, dissemination, and promotion of the false and misleading Prospectus directly to Plaintiff and Class members.

67. The Securities Act Defendants owed Plaintiff and Class members the duty to make a reasonable and diligent investigation of the statements contained in the prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. The Securities Act Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

68. Plaintiff did not know – nor, in the exercise of reasonable diligence, could Plaintiff have known – of the material untruths and omissions contained in the Prospectus at the time Plaintiff acquired PicS shares.

- 19 -

69.      By reason of the conduct alleged herein, the Securities Act Defendants violated §12(a)(2) of the Securities Act. As a result of such violations, Plaintiffs and Class members purchased PicS shares pursuant to the Prospectus and sustained substantial damages in connection with their purchases of the stock. Accordingly, Class members who hold the common stock issued pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their PicS Class A common stock to the Section 12(a)(2) Defendants. Class members who have sold their PicS common stock seek damages, disgorgement, and additional remedies to the extent permitted in equity or at law.

### COUNT III

**For Violations of Section 15 of the Securities Act**
**Against the Section 15 Defendants**

70.      Plaintiff repeats and re-alleges each and every allegation contained above in ¶¶1-69 as if fully set forth herein.

71.      This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of Plaintiff and the Class against the Section 15 Defendants for their control of PicS in connection with PicS' violations of Section 11 and Section 12(a)(2) of the Securities Act relating to the IPO.

72.      The Individual Defendants possessed the power to control, and did control, directly and/or indirectly, the actions of PicS at all relevant times. By virtue of their positions as directors and/or senior officers of PicS, the Individual Defendants possessed the power and authority to control the contents of PicS' Offering Documents and had the ability and opportunity to prevent their issuance or cause them to be corrected. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or

major shareholders of PicS. PicS also exercised control over and directed the actions of its senior managers, directors, employees, and agents, including the Individual Defendants.

73.     J&F, J. Batista, and W. Batista also controlled PicS and the IPO. After the IPO, PicS was considered a "controlled company" within the meaning of the listing rules of the Nasdaq because J&F, J. Batista, and W. Batista had more than 50% of the voting power for the election of directors to PicS' Board. These facts were made clear by the Offering Documents, which stated, in relevant part:

> J&F Participações S.A., or "J&F Participações," will beneficially own 23.5% of our Class A common shares and 100% of our Class B common shares, which will represent approximately 96.4% of the combined voting power in our general meeting following this offering, assuming no exercise of the underwriters' option to purchase additional Class A common shares . . . Accordingly, we expect to be a "controlled company" within the meaning of the corporate governance standards of Nasdaq. J&F Participações is jointly controlled, pursuant to a shareholders' agreement, by Messrs. Joesley Mendonça Batista and Wesley Mendonça Batista, our ultimate controlling shareholders. As such, Messrs. Joesley Mendonça Batista and Wesley Mendonça Batista are expected to control or have the ability to control matters that require approval at a general meeting of shareholders pursuant to Dutch law and/or our articles of association, including, among other matters, the appointment of a majority of the members of our board of directors.

74.     As control persons of PicS, the Section 15 Defendants are liable jointly and severally and to the same extent as PicS for its violations of Section 11 and Section 12(a)(2) of the Securities Act. By reason of such conduct, and participation, the Section 15 Defendants are liable pursuant to Section 15 of the Securities Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining this action to be properly maintained as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying Plaintiff as Class Representatives and Robbins Geller Rudman & Dowd LLP as Class Counsel;

B.       Awarding damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

C.       Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including reasonable attorneys' fees and expert fees, and other costs and disbursements;

D.       Awarding Plaintiff and the Class recession or a recessionary measure of damages; and

E.       Awarding Plaintiff and the Class, disgorgement, or such other and further relief, including any injunctive or other equitable relief, as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  June 5, 2026

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN (NY Bar No. 2564680)

*/s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
BRIAN E. COCHRAN
655 W Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
ROBERT J. ROBBINS
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
rrobbins@rgrdlaw.com

ABRAHAM, FRUCHTER & TWERSKY, LLP
JACK G. FRUCHTER
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone:  212/279-5050
jfruchter@aftlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION OF PLAINTIFF**
**PURSUANT TO THE FEDERAL SECURITIES LAWS**

FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC ("Plaintiff") declares as follows:

1. Plaintiff has reviewed the Class Action Complaint prepared by counsel and has authorized its filing.

2. Plaintiff did not purchase or otherwise acquire the securities that are the subject of this action at the direction of plaintiff's counsel, or in order to participate in this or any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff purchased 100 shares of PicS N.V. common stock on January 29, 2026 at a price of $19.00 per share and sold 100 shares of common stock on February 5, 2026 at a price of $16.10 per share.

5. During within the three years preceding the date on which this Certification is signed, Plaintiff has sought to serve as a representative party on behalf of a class in the action entitled *FirstFire Global Opportunities Fund, LLC v. Venture Global, Inc., et al.*, 25-cv-633 (Va.E.D. 2025).

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 1st day of June, 2026.

*Eli Fireman*

FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC